IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| ADAMS COUNTY ASPHALT COMPANY, | : | BANKRUPTCY NO.: 1-03-bk-00722-JJT |
| DEBTOR | : | |
| ADAMS COUNTY ASPHALT COMPANY, | : | {**Nature of Proceeding**: Motion for Summary Judgment (Doc. #115)} |
| PLAINTIFF | : | |
| vs. | : | |
| OLDCASTLE, INC. and PENNSY SUPPLY, INC., | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 1-08-ap-00064-JJT** |

# OPINION

Pending is an Amended Complaint filed by the Debtor, Adams County Asphalt Company (ACA), against Oldcastle, Inc. and Pennsy Supply, Inc., Defendants, on September 21, 2010. Subsequently, the Defendants filed a Motion for Summary Judgment.

The aged litigation history between the parties is replete with events, the repetition of which would merely serve to confuse an already convoluted relationship. Suffice it to say only those facts that impact this disposition will be recited here.

The allegations of the Amended Complaint are, on August 15, 1995, the owner[1] of a certain quarry located in Dauphin County, Pennsylvania, known as Fiddlers Elbow Quarry,

---

[1] At the time the Quarry Lease was entered into, the property was owned by Robert M. Mumma, II Grantor Retained Annuity Trust (GRAT). It had since been transferred to Mumma and his wife, Susan, and thereafter to Mann Realty. Doc. #81. Regardless, at all times the owner was controlled by Robert Mumma, II. See Debtor's Brief in Support, Doc. #138 at 5.

entered into a lease of the property with Pennsy Supply[2]. On the same date, Pennsy entered into an "Asset Purchase Agreement" with ACA and Gemini, a related debtor entity, to purchase certain materials on site. The Agreement was for a term of five years. ACA asserts in the Complaint the Quarry Lease and the Asset Purchase Agreement are no longer valid. Doc. #81 at ¶ 67. ACA identifies itself as a "third party beneficiary," though, in the absence of a reference to a specific agreement, it is difficult to fathom as to what ACA is a third party beneficiary of. ACA argues it is without an adequate remedy at law.

The Defendants assert, in their Motion for Summary Judgment, an arbitration between the parties to the lease and/or their successors, after the Complaint was filed and commenced in accordance with the contract terms, has concluded Pennsy is in proper possession and the lease is valid until 2015. ACA is an affiliate of the owner party to the contract. On the other hand, ACA asserts the arbitration is violative of the automatic stay of bankruptcy since ACA claims to have been granted certain rights by the owner. ACA suggests the arbitration is void as to it since the automatic stay was in effect at the time the decision was rendered.

In brief summary, this is the background of this litigation. All of this may be of little significance if this Court has not the jurisdiction to adjudicate the case.

*Stern v. Marshall,* 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) has revisited the jurisdictional swath of the bankruptcy court. *Nuveen Municipal Trust* has reminded me a trial court has an independent obligation to review its jurisdiction, even if not challenged. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3rd Cir. 2012).

---

[2] The Defendant, Oldcastle, Inc., is alleged by the Plaintiff to be the assignee of Pennsy. Doc. #81 at ¶ 47.

I begin with the premise the Debtor here is asserting a claim, it says, predates the bankruptcy filing. I think it fair to conclude this Court, generally, has non-core jurisdiction to hear prepetition claims. *Beard v. Braunstein*, 914 F.2d 434, 443 (3rd Cir. 1990). These are related matters which neither arise under title 11 or arise in a bankruptcy case. 28 U.S.C. § 157(b)(1). The date the Complaint was initiated also plays a role in determining my ability to adjudicate the controversy. ACA's Chapter 11 Plan has been confirmed, but this Complaint was filed prior to confirmation. Jurisdiction is determined at the time the action is begun. If an action is brought after confirmation, the Court's jurisdiction "wanes." *Nuveen Mun. Trust*, 692 F.3d at 294. I conclude I have non-core jurisdiction of this controversy.

*Discussion*

That brings me to the matter at issue being the Motion for Summary Judgment filed by the Defendants.

Rule 56(a), incorporated into the Bankruptcy Rules by Rule 7056, states:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

Summary judgment applies where there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law, Fed.R.Civ.P. 56(c)), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Amended Complaint is inarticulate. It advances three Counts, Count I, quasi-

contract / unjust enrichment / quantum meruit; Count II, promissory estoppel; and Count III, turnover of property to the debtor's estate pursuant to 11 U.S.C. § 542. Notwithstanding the labels, ACA appears to base its claims on the following: (1) breach of the Asset Purchase Agreement to which ACA was a party; (2) breach of an unspecified agreement that may have provided, among other things, a commitment to make product available to ACA at a discounted price; (3) breach of the Quarry lease, to which ACA was a third party beneficiary; and (4) inability to exercise rights given to it by the owner which has been denied possession by the Defendants.

The Defendants state the statute of limitation would have expired on an action arising out of the August 15, 1995, Asset Purchase Agreement. This argument appears to be well-founded. Pennsylvania law would apply to the interpretation of the Agreement. Doc. #1-2 at ¶ 18.1. The statute of limitation for contract actions is four years. 42 Pa.C.S.A. § 5525. The conclusion appears inescapable ACA's ability to litigate a claim arising out of the Asset Purchase Agreement would have expired in 2004. It is possible this period could have been extended by the intervening bankruptcy in 2003, but that extension would be limited to two years. 11 U.S.C. § 108(a)(2). The initial complaint by the Debtor against the Defendants was not filed until after that two years had expired. Doc. #1, 1:06-ap-00161-JJT. The undisputed material facts allow me to conclude no cause of action could arise under the Asset Purchase Agreement since the statute of limitations has run its course. No equitable claim could arise out of its breach since equitable remedies are generally not available where the parties have entered into an express contract. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super. 1999).

This conclusion may not necessarily require judgment in favor of the Defendants on all

the Counts of the Complaint. The Debtor appears to vaguely argue rights given to it as an "affiliate" of the owner have been wrongfully denied it by the Defendants.

With regard to the second basis for the Complaint, the Debtor allegedly had negotiated the ability to purchase materials on site for a reduced rate. The claim is the failure to abide by that agreement has resulted in further damage to the Debtor. While the basis for this argument is not addressed in the Complaint, the Debtor's second amended disclosure statement references support for this allegation in Section 6 of the Asset Purchase Agreement. Doc. #336, 1:03-bk-00722-JJT.

Again, the lapse of time has made this argument untenable.

The third basis for ACA's Complaint appears to arise from Defendants' breach of the Quarry Lease and presumably Defendants' barring ACA from access in violation of the lease. It is undisputed the lease exists. Doc. #81 and #89 at ¶ 33. It is disputed ACA is a beneficiary to that lease. Doc. #81 and #89 at ¶ 48. That could be a material fact should this litigation be based on the breach of the contract, the dispute of which could render impossible disposition by summary judgment.

The fourth basis for the Complaint depends on the existence of an unidentified agreement that allows ACA to establish a blacktop plant on the premises. As best as I can determine, such argument is based on the commitment of Robert Mumma, II, controlling principal of both the owner of the property and the Debtor, ACA, to authorize ACA to utilize the quarry in this fashion upon relinquishment of the property by the Defendants. Declaration of Robert M. Mumma, II, Doc. #159. It appears to be in support of this argument ACA maintains the invalidity of a certain arbitration award in favor of the Defendants and against the owner,

inasmuch as it was rendered while the automatic stay was allegedly in effect.

In an effort to obtain a ruling the quarry lease terminated, the owner, Robert Mumma and/or a related entity, Mann Realty Associates, commenced an arbitration against the tenants, the Defendants herein, on or about February 25, 2010. The arbitrator concluded that the Quarry Lease was renewed and is still in effect until 2015.

ACA's last Amended Complaint, filed by new counsel on September 21, 2010, advances the contracts are no longer in effect but that access is being denied by the Defendants. Doc. #81.

Placed at issue is the impact of the arbitration held between the parties to the Quarry Lease. The efficacy of that arbitration ruling not only may be of import with regard to the Debtor's ability to sue the defendants, it may also be of significance when analyzing ACA's argument that the arbitration moved forward in violation of the automatic stay and is void. If Debtor maintained an interest in the Quarry Lease and the arbitration went forward in Debtor's absence, the Debtor's rights might not be presently impacted since the arbitrator's conclusions would have been void as to the Debtor. *Acands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252 (3rd Cir. 2006).

ACA dismisses the arbitrator's conclusion that the lease is still in effect arguing it is not binding on ACA. While such argument is logical, the strength of this position is diminished by the fact both the owner of the property and ACA are controlled by the same individual, Robert Mumma, II.

Some background here would be helpful. Earlier in this litigation, in December 2008, the Defendants sought to stay the current litigation and compel the parties to submit to arbitration under the contracts at issue. Doc. #16. Debtor, ACA, resisted this request and argued at the

hearing on this matter the contracts were terminated by the Defendants' alleged default, and therefore, the arbitration clause did not apply. In support of that argument, ACA's then counsel withdrew that portion of the Complaint based on contracts. Transcript of 1/22/09, Doc. #28[3]. Accepting that position, the Court denied Defendants' request to compel arbitration on January 23, 2009. Doc. #24. It appears to be unfair to give much weight now to the argument ACA's participation in the arbitration was essential for its ruling to have any significance. Since the controlling principal for the owner and ACA is the same person, Robert Mumma, II, it does appear the decision not to intervene in the arbitration by ACA was a conscious decision so as to argue it was not bound by its result. ACA's ongoing knowledge of the arbitration without intervening and/or objecting, strongly suggests grounds that would support an annulment of the automatic stay if such were requested. *In re Myers*, 491 F.3d 120 (3rd Cir. 2007); *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994); *In re Coletta*, 336 Fed.Appx. 202 (3rd Cir. 2009) (unpublished opinion). Such annulment under 11 U.S.C. § 362(d) would validate the results of

---

[3] MR. BRESSET [then counsel for the Debtor]: Right now our claim to the extent that it would not be time barred by either latches or statute of limitations would be clearly extra contractual. There's no question about that. It would not be based upon the contract.
Transcript of 1/22/09 at 15, Doc. #28.

Later on at the hearing, this exchange took place:
    THE COURT: Well, it just strikes me that you're at a crossroads here. You either pursue this litigation in one direction or you pursue it in another. Right?
    MR. BRESSET: That is correct, Your Honor.
    THE COURT: Which way do you want to go?
    MR. BRESSET: That there is no valid and enforceable agreement between the parties. Therefore, ergo and hither to, their claim for arbitration should be denied.
    THE COURT: So I'm not trying to get ahead of this and you know what, it may very well mean that you -- you filed your answer already. You can file a motion for summary judgment. But I will consider this a withdraw[al] of any contract claims.
    MR. BRESSET: Based upon that written contract?
    THE COURT: Yeah.
    MR. BRESSET: Yes.
    THE COURT: So if that's the case, then I have no right to compel arbitration, do I?
Transcript of 1/22/09 at 18-19, Doc. #28.

the arbitration as to ACA.

There is a troubling aspect to the litigation. My primary concern is with the integrity of the Court. Two affiliates, controlled by the same individual, advance contradictory arguments in different forums. The Debtor affiliate (ACA) pursues this Complaint for causes of action outside the contract and opposes arbitration when requested. The owner affiliate initiates the arbitration against the Defendants seeking to terminate the contract. When the arbitrator ruled against the owner affiliate, the Debtor affiliate argues now it should have been a party to the arbitration and the results are void.

The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616 (3rd Cir. 1996), *cert. denied* 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). After vigorously opposing arbitration, ACA now bemoans the fact it did not participate. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 228, 120 S.Ct. 2143, 2154, 147 L.Ed.2d 164 (2000).

ACA's current position that this Court should override the arbitrator's finding, appears to do significant violence to the sanctity of the contract and its arbitration provision as well as the integrity of this Court.

Earlier in this litigation, Debtor's ex-counsel made clear its cause of action was "extra contractual." The entire cause of action appears to depend on the Quarry Lease being deemed terminated. Until it is deemed terminated, it simply does not appear the Debtor can advance this cause of action. It is likely this prerequisite was just what the owner had in mind when it

commenced arbitration proceedings pursuant to the Quarry Lease. Unfortunately for ACA, the arbitrator concluded the Quarry Lease was still in effect until 2015. My conclusion is, until such Quarry Lease is terminated, ACA can establish no cause of action against the Defendants outside of the contracts.

I had indicated this is a non-core matter which would allow me to submit proposed findings of fact and conclusions of law to the District Court, 28 U.S.C. § 157(c)(1). The parties may consent to this Court's entry of a final order. ACA has done so by recent filing. Doc. #157. I conclude the Defendants have done so by the filing of this summary judgment motion. *See, for example*, *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 570 (9th Cir. 2012).

As an aside, the status of the Quarry Lease may be a *non sequitur*. If the lease is valid, then ACA, as a potential "affiliate" of the owner under the lease, may have certain rights to remove overburden, etc. On the other hand, if the lease terminates, then the owner would have no impediment in designating ACA to work its property.

My Order will follow.

By the Court,

Date: September 26, 2013

John J. Thomas, Bankruptcy Judge
(CMS)